******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CINDY L. KAREN *v.* WILLIAM P. LOFTUS
(AC 43488)

Elgo, Suarez and Palmer, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court denying her motion to open the judgment of dissolution. At the time that the plaintiff commenced the dissolution action, she sought to enforce the terms of the parties' prenuptial agreement. The parties disagreed as to the defendant's obligations pursuant to the agreement and agreed to an arbitration of the dispute. The arbitrator concluded in favor of the defendant, and the court incorporated the arbitrator's decision into the judgment of dissolution. More than four months later, the plaintiff filed a postjudgment motion to open, asserting that the defendant made false representations during the arbitration and that the arbitrator had relied on the purportedly false testimony in reaching his conclusion. The court denied the motion, finding that the plaintiff was seeking to obtain a new trial but had failed to demonstrate that the evidence on which she based her claims could not have been produced at the former trial through the exercise of due diligence. On the plaintiff's appeal, *held* that the trial court applied an incorrect legal standard in denying her motion to open: although the plaintiff's motion did not use the word fraud, the motion clearly addressed the elements of a fraud action, and her reply memorandum unambiguously asserted that her motion was based on fraud related to the defendant's testimony during the arbitration proceeding; moreover, the court adjudicated the plaintiff's motion pursuant to the standard for adjudicating a motion for a new proceeding on the basis of newly discovered evidence rather than pursuant to the standard for a motion to open on the basis of fraud, as the court's decision analyzed several of the factors required to adjudicate a motion for a new proceeding on the basis of newly discovered evidence, including an imposition on the plaintiff of an obligation of due diligence, which has been eliminated from the standard for adjudicating a motion to open on the basis of fraud; accordingly, the plaintiff was entitled to a preliminary hearing on a determination of whether there was probable cause to believe the judgment had been obtained by fraud.

Argued September 20, 2021—officially released January 25, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. Gerard I. Adelman*, judge trial referee, approved the stipulation of the parties to enter into binding arbitration as to certain disputed matters; thereafter, the arbitrator issued a decision and the court, *Sommer, J.*, incorporated the arbitrator's decision into its judgment dissolving the marriage and granted certain other relief in accordance with the parties' separation agreement; subsequently, the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, denied the plaintiff's motion to open the judgment, and the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Thomas J. Rechen*, with whom were *Charles D. Ray*, and, on the brief, *Brittany A. Killian*, for the appellant (plaintiff).

*Logan A. Carducci*, for the appellee (defendant).

*Opinion*

SUAREZ, J. The plaintiff, Cindy L. Karen, appeals from the judgment of the trial court denying her motion to open the judgment dissolving her marriage to the defendant, William P. Loftus. On appeal, the plaintiff claims that the court utilized the incorrect legal standard in adjudicating her motion to open.[1] We agree, and, accordingly, we reverse the judgment of the court and remand for further proceedings in accordance with this opinion.

The following facts and procedural history are relevant to this appeal. The plaintiff and the defendant were married in June, 2007. Prior to the marriage, on May 14, 2007, the parties entered into a prenuptial agreement (agreement). Paragraph 6 (B) of the agreement provides: "If, at the time that an action for dissolution of marriage, annulment or legal separation is commenced, [the defendant] has left his employment with Merrill Lynch under an arrangement that is in any fashion tantamount to a 'sale' of his interest in Merrill Lynch, i.e. a transaction under which [the defendant] receives any property, real or personal, including but not limited to a sum of money, by way of a 'sign-on' bonus or otherwise, a premium bonus, and/or restricted stock or other ownership interest ('Sale Proceeds'), to work for another entity for any reason whatsoever, including his bringing a book of business and/or a clientele and/or a book of other assets to a prospective employer, then [the defendant] shall first be entitled to set aside the value of $75,000, or $75,000 from the Sale Proceeds, and the balance of such Sale Proceeds, whenever received or receivable by [the defendant], shall be divided between [the defendant] and [the plaintiff] according to the Allocation. . . . If the Sale Proceeds have been invested in other assets, the Parties shall maintain a record of all such investments, and each Party shall be entitled to the value of such Sale Proceeds so invested and any proportional gain or loss that is associated with such investment according to the Allocation. Again, each Party shall be responsible for the taxable gain on any sale of such interest in such investment in proportion to the Allocation."

In December, 2014, the plaintiff commenced a dissolution action against the defendant, seeking to enforce the terms of the agreement. The parties disagreed as to whether the defendant's obligation to pay the plaintiff pursuant to paragraph 6 (B) was triggered by the specific circumstances surrounding the defendant's departure from his employment at Merrill Lynch. Under this paragraph of the agreement, if the defendant's departure from Merrill Lynch was determined to be "tantamount to a 'sale' of his interest in Merrill Lynch," the plaintiff would be entitled to one half of the sale proceeds after the defendant set aside $75,000. If the defendant's departure from Merrill Lynch was not "tanta-

mount to a 'sale,' " however, the plaintiff would not receive any of the proceeds. On August 1, 2016, the parties entered into a stipulated judgment consistent with their agreement, excepting paragraph 6 (B) of the agreement. Instead, the stipulation required the court to refer the case to an arbitrator for resolution of the issue of whether the defendant's departure from Merrill Lynch was a "sale of his interest in Merrill Lynch." On that same day, the court, *Hon. Gerard I. Adelman*, judge trial referee, accepted the parties' stipulation and referred the issue of the defendant's departure from Merrill Lynch to an arbitrator.

The parties agreed to have C. Ian McLachlan, a retired justice of the Connecticut Supreme Court, act as the arbitrator of their dispute. Beginning on February 16, 2017, McLachlan held a two day hearing wherein both parties testified. On April 27, 2017, McLachlan issued a decision in which he concluded that the defendant's departure from Merrill Lynch was not "tantamount to a sale" under the agreement. In his memorandum of decision, McLachlan found that, in October, 2008, sixteen months after the parties were married, the defendant and three colleagues left Merrill Lynch and formed a business known as " 'LLBH.' " Each partner invested between $10,000 and $15,000 to start LLBH. Shortly after the business was formed, Focus Financial (Focus) purchased an option to buy an interest in LLBH for $2 million, which was shared equally among the partners. Focus subsequently exercised its option, there was a corporate reorganization, and Partners Wealth Management was created. When Focus exercised its option, the defendant received $1,665,000 and 90,000 shares of Focus stock, as well as some options.

McLachlan further found that, at the time of the agreement, the defendant had certain benefits incident to his employment with Merrill Lynch, including restricted stock units, which he forfeited by leaving Merrill Lynch. This practice of forfeiture was "very common in the financial services industry and was one of the reasons that brokers were generally paid a 'sign-on' bonus when changing jobs by the new employer." Additionally, "brokers were being paid [by their new employers] for their 'book of business' which, in effect, represented their customers." The plaintiff and the defendant negotiated the agreement, specifically paragraph 6 (B), to account for this possibility.

Additionally, McLachlan concluded that the evidence did not support the plaintiff's claim that the defendant contemplated leaving Merrill Lynch at the time the agreement was made. The defendant did not leave Merrill Lynch until sixteen months after the date of the marriage, and there was no mention of the defendant starting his own business in the agreement. Ultimately, McLachlan determined that paragraph 6 (B) was drafted in contemplation of the defendant leaving Merrill Lynch

and going to a competitor that would compensate him for both the employment benefits that he was forfeiting from Merrill Lynch and the contracts and business that he would bring to the new company. Instead, the defendant left Merrill Lynch to start his own company and invested his own money into the venture. An option to invest in that new venture was sold, and more than one year later, the business created by the venture itself was sold. According to McLachlan, this scenario is "substantially different than the situation where an employee leaves a brokerage house and is compensated by the new employer." On June 16, 2017, the trial court, *Sommer*, *J.*, incorporated McLachlan's decision into a final judgment of dissolution.

On April 3, 2018, the plaintiff filed a pleading titled, "Motion to Open—Post Judgment." In her motion, the plaintiff asserted that subsequent legal proceedings between the defendant and his partners at LLBH "clearly indicate" that several of the representations that the defendant had made during the arbitration were false. According to the plaintiff, the defendant falsely represented that (1) his leaving Merrill Lynch did not contemplate taking his contacts and clients with him; (2) he and his partners did not contemplate the option agreement or transaction with Focus until after the execution of the agreement between the plaintiff and the defendant; and (3) the option agreement and transaction with Focus were not a "sale." The plaintiff claimed that the defendant "wholly mischaracterized the nature of his departure from Merrill Lynch, in that he knew prior to the departure that he was selling the LLBH business, including their clients, to [Focus], and that the sale took place pursuant to a scheme which was contemplated by the parties when drafting [paragraph 6 (B)] of the prenuptial agreement." The plaintiff further claimed that the defendant's testimony during the arbitration proceeding regarding the Focus transaction was "a statement of fact known to be false, was intended to persuade the arbitrator to conclude that the Focus transaction was not a sale," and "the arbitrator relied upon this false testimony in denying [the plaintiff's] prayer for the application of [paragraph 6 (B)] of the parties' prenuptial agreement."

The essence of the plaintiff's argument in her motion to open is that the defendant testified falsely during the arbitration and that McLachlan relied on the purportedly false testimony in concluding that paragraph 6 (B) did not apply to the defendant's departure from Merrill Lynch to form LLBH.

On December 11, 2018, the defendant filed a memorandum in opposition to the plaintiff's motion to open. The defendant opposed the motion on two separate grounds. First, the defendant argued that the plaintiff's motion was an attempt to get a "second bite at the apple." Specifically, the defendant argued that the plain-

tiff was merely seeking to relitigate the same argument that she had made before McLachlan in the arbitration proceeding, namely, that the defendant's decision to leave Merrill Lynch, to form LLBH, and to sell an option to purchase LLBH to Focus was "tantamount to a sale" under paragraph 6 (B) of the agreement. Second, the defendant argued that the plaintiff failed to meet the necessary elements to prevail in her motion, which, despite its title, he characterized as a motion for a new proceeding on the basis of newly discovered evidence.

On January 11, 2019, the plaintiff filed a reply to the defendant's December 11, 2018 memorandum in opposition to the motion to open. In her reply, the plaintiff argued that the defendant "lied under oath and therefore committed fraud concerning whether [Focus] was involved in the decision by [the defendant] and his fellow partners to leave Merrill Lynch and open a new business." The plaintiff asserted that, with the motion to open, she "seeks to unveil new evidence" that "makes clear that [1] [the defendant] committed perjury in the arbitration proceedings, [2] his perjury was material, [3] the arbitrator relied on his perjury, [4] the resulting judgment is polluted by his perjury, and [5] it is likely that a new trial will produce a different result."

On March 7, 2019, the defendant filed a surreply in further opposition to the plaintiff's motion to open. The defendant argued that the court should deny the plaintiff's motion because she failed to allege, let alone prove, the essential elements of fraud. Specifically, the defendant argued that the plaintiff failed to allege that she relied on the defendant's purportedly false statements to her detriment.

On May 6, 2019, a hearing was held before the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, on the plaintiff's motion to open. On September 25, 2019, the court issued an order denying the plaintiff's motion to open the judgment. The order stated in relevant part: "[T]he plaintiff is mistakenly claiming a second bite at the apple. She is attempting to open a judgment by filing a motion which is well beyond [the] permissible four [month] window to open civil judgments and she is claiming fraud. The exception to opening judgments outside of the initial four months does not apply to cases where a party wants to [relitigate] issues already litigated and decided. She seeks to reopen the judgment and obtain a new trial based on what she attempts to characterize as newly discovered evidence. However the evidence she references as newly discovered is evidence which was available during the arbitration and it would have been cumulative of the evidence offered at the arbitration. The plaintiff's claim fails because the evidence relied upon was not in fact newly discovered evidence and the plaintiff has failed to demonstrate that the evidence could not have been discovered and produced at the former trial by the exercise of due

diligence. Also, it does not appear to this court that a different result would be had at another trial."

On appeal, the plaintiff claims that the court utilized an incorrect legal standard in adjudicating her motion to open the judgment of dissolution. Specifically, the plaintiff argues that the court applied the standard for a motion for a new proceeding on the basis of newly discovered evidence, rather than the standard for a motion to open on the basis of fraud. We agree.

We begin by setting forth the standard of review that governs the plaintiff's claim. The consideration of whether a court has applied an incorrect legal test is a question of law, which requires our plenary review. See *In re Jacob W.*, 330 Conn. 744, 754, 200 A.3d 1091 (2019). Because our review is plenary, "we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Barber* v. *Barber*, 193 Conn. App. 190, 196, 219 A.3d 378 (2019).

We next set forth the legal principles relevant to this claim. General Statutes § 52-212a provides, in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ." This statute, however, "does not abrogate the court's common-law authority to open a judgment beyond the four month limitation upon a showing that the judgment was obtained by fraud, duress, or mutual mistake." *Bruno* v. *Bruno*, 146 Conn. App. 214, 230, 76 A.3d 725 (2013).

In *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269–70, 540 A.2d 713 (1988), this court held that, in considering a motion to open on the basis of fraud, a court must first make a preliminary determination of whether there is probable cause to believe that the judgment was obtained by fraud.[2] "*Oneglia* and its progeny are grounded in the principle of the finality of judgments. . . . [T]he finality of judgments principle recognizes the interest of the public as well as that of the parties [that] there be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligations to act further by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on. . . . *Oneglia* carefully balanced that interest in finality with the reality that in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. . . . The court in *Oneglia* thus ratified the gatekeeping mechanism employed by the trial court, whereby a court presented with a motion to open by a party alleg-

ing fraud in a postjudgment dissolution proceeding conducts a preliminary hearing to determine whether the allegations are substantiated. . . . [I]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court [properly] would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." (Internal quotation marks omitted.) *Veneziano* v. *Veneziano*, 205 Conn. App. 718, 726–27, 259 A.3d 28 (2021). "This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he [or she] will prevail, only that there is probable cause to sustain the validity of the claim." (Internal quotation marks omitted.) *Bruno* v. *Bruno*, supra, 146 Conn. App. 231.

A motion for a new proceeding on the basis of newly discovered evidence, on the other hand, requires the application of a different standard from the one applied to a motion to open on the basis of fraud. "A court may grant a motion for a new proceeding based on newly discovered evidence if the movant establishes by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new [proceeding]; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new [proceeding]." (Internal quotation marks omitted.) *Grasso* v. *Grasso*, 153 Conn. App. 252, 265, 100 A.3d 996 (2014).

In order to resolve the plaintiff's claim that the court applied the incorrect legal standard in the present case, we must first determine the nature of the plaintiff's motion. The plaintiff contends that her motion was a motion to open on the basis of fraud. The defendant argues, however, that the plaintiff's motion is a motion for a new proceeding on the basis of newly discovered evidence. In support of his argument, the defendant contends that the plaintiff "did not even reference 'fraud' in her motion to open and did not use this buzzword until she hired new counsel to draft her reply memorandum." It is well settled, however, that "courts do not interpret pleadings so to require the use of talismanic words and phrases. . . . In Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Citation omitted; internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 90, 256 A.3d 684, cert. denied, 339 Conn. 909,

261 A.3d 744 (2021).

Our independent review of the plaintiff's motion to open leads us to conclude that it is based on fraud. As noted previously in this opinion, "[t]he elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005). Although the plaintiff did not use the word "fraud" in her motion, the motion clearly addressed the elements of a fraud action. The plaintiff asserted therein that "[s]ubsequent legal proceedings between [the defendant] . . . and his partners . . . clearly indicate that the *representations made by* [*the defendant*] *during the arbitration . . . were false* . . . ." (Emphasis added.) Further, the plaintiff argued that the defendant's "testimony regarding the Focus transaction [w]as a statement of fact *known to be false*, was *intended to persuade the arbitrator* to conclude that the Focus transaction was not a sale for reasons that conflict with subsequent testimony, and that the *arbitrator relied upon this false testimony* in denying [the plaintiff's] prayer for the application of [paragraph 6 (B)] of the parties' prenuptial agreement." (Emphasis added.)

Moreover, the plaintiff's January 11, 2019 reply memorandum unambiguously asserts that the motion to open is based on fraud related to the defendant's testimony during the arbitration proceeding. The plaintiff plainly argues that the defendant committed perjury in the arbitration proceedings, the perjury was material, the arbitrator relied on the perjury, the resulting judgment was tainted by the perjury, and it is likely that a new trial will produce a different result. On the basis of these allegations, the plaintiff asked the court to "open and set aside [the] judgment *in light of the fraud*." (Emphasis added.) Therefore, we conclude that, despite the fact that the plaintiff did not use the word "fraud" in her motion, it is apparent upon reading the motion in its entirety that the general theory upon which it was predicated is one of fraud.

Having determined that the plaintiff's motion is a motion to open on the basis of fraud, we next must consider the legal standard applied by the court in denying the plaintiff's motion. The court stated in its memorandum of decision that the plaintiff was trying to "obtain a new trial based on what she attempts to characterize as newly discovered evidence." The court then analyzed several of the factors required to adjudicate a motion for a new proceeding on the basis of newly discovered evidence. The court concluded that the plaintiff's claim failed because "the evidence relied upon was not in fact newly discovered evidence . . . ."

Further, the court reasoned that the plaintiff "failed to demonstrate that the evidence could not have been discovered and produced at the former trial by the exercise of due diligence." Finally, the court concluded that "it does not appear to this court that a different result would be had at another trial."

Further indication that the court applied the newly discovered evidence standard is the fact that the court imposed on the plaintiff an obligation of due diligence, an obligation that has been eliminated from the standard for adjudicating a motion to open on the basis of fraud. Prior to our Supreme Court's ruling in *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991), there was a due diligence limitation on the court's ability to grant relief from a dissolution judgment procured by fraud. See *Varley* v. *Varley*, 180 Conn. 1, 4, 428 A.2d 317 (1980). A party to a marital dissolution judgment was required to establish diligence in attempting to discover the fraud in order subsequently to open the judgment on the basis of a claim of fraud. See *Billington* v. *Billington*, supra, 214. In *Billington*, however, our Supreme Court eliminated this requirement. See id., 219.

In the present case, the court concluded that the plaintiff "failed to demonstrate that the evidence could not have been discovered and produced at the former trial by the exercise of due diligence." Although our Supreme Court has removed the due diligence obligation from the adjudication of a motion to open on the basis of fraud; see *Billington* v. *Billington*, supra, 220 Conn. 214; the due diligence requirement *is* an element of the standard for adjudicating a motion for a new proceeding on the basis of newly discovered evidence. See *Grasso* v. *Grasso*, supra, 153 Conn. App. 265. Because the court imposed on the plaintiff the due diligence requirement, it appears that the court adjudicated the plaintiff's motion pursuant to the standard for adjudicating a motion for a new proceeding on the basis of newly discovered evidence and *not* pursuant to the standard for adjudicating a motion to open on the basis of fraud.

Pursuant to the applicable standard for a motion to open on the basis of fraud, the court was required to make a preliminary determination of whether there was probable cause to believe that the judgment was obtained by fraud before it could consider the merits of the claim. If the court found probable cause to believe that the judgment was obtained by fraud, then the court was required to conduct an evidentiary hearing to determine whether, in fact, there was fraud. In the present case, however, the court did not make a preliminary finding of probable cause. Instead, the court determined that the plaintiff failed to show that there was newly discovered evidence and that the newly discovered evidence "could not have been discovered and produced

at the former trial by the exercise of due diligence.'' Accordingly, we conclude that the court undertook an incorrect legal analysis in denying the plaintiff's motion to open. In light of the fact that the court did not hold a hearing to make a preliminary determination regarding probable cause, the proper remedy is to reverse the judgment denying the motion to open and remand the case for such a hearing and for further proceedings that may be necessary depending on any findings that the court makes in connection with that preliminary hearing.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The plaintiff also claims in this appeal that, in adjudicating her motion to open, the court improperly concluded that a different result would not be had at another trial. Because we conclude that the court utilized the incorrect standard in denying the plaintiff's motion to open, it is unnecessary for us to reach the merits of this claim.

[2] It is well settled that fraud is a "deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005).