******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# KARL ANDERS HEBRAND *v.* ANNIKA HEBRAND
## (AC 44703)

Moll, Suarez and Seeley, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying her motion to open and vacate a prior trial court's postjudgment modification of the plaintiff's alimony obligation. In 2017, the trial court modified the plaintiff's alimony obligation in accordance with a stipulated agreement the parties had filed with the court. The defendant did not file her motion to open until three years later, in 2020. On appeal, the defendant claimed, inter alia, that the court improperly concluded that she failed to prove that the plaintiff had fraudulently induced her to enter into the 2017 modification agreement and that the modification court lacked subject matter jurisdiction to consider the agreement because, inter alia, the plaintiff mislabeled the motion to modify the alimony obligation and failed to pay the required filing fee. *Held*:

1. The defendant's contention that the modification court lacked subject matter jurisdiction to consider and modify the plaintiff's alimony obligation was meritless; none of the purported defects in the motion to modify would have deprived the court of jurisdiction, and the defendant failed to provide any authority to support her jurisdictional claims.

2. The trial court did not abuse its discretion in denying the defendant's motion to open and vacate the modification court's alimony order: the defendant failed to establish that the plaintiff fraudulently induced her to join his efforts to modify the alimony obligation, as the evidence showed that the parties negotiated the agreement with the advice of their counsel and that the defendant chose to sign the agreement despite her counsel's advice not to do so.

3. The defendant's claims that the modification court improperly failed to find the occurrence of a substantial change in the parties' circumstances and to conform its order to those changes was unavailing; because the plaintiff failed to file her motion to open or an appeal from the 2017 alimony modification within the twenty day appeal period, the claims she raised constituted an untimely and impermissible collateral attack on the actions of the modification court, as she could test only whether the court abused its discretion in denying her motion to open and vacate the alimony modification.

Argued May 17—officially released October 25, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Stanley Novack*, judge trial referee, granted the parties' joint motion to modify alimony and other financial orders; subsequently, the court, *M. Moore, J.*, denied the defendant's motion to open the modified order of alimony and other financial orders, and the defendant appealed to this court. *Affirmed.*

*Sol Mahoney*, for the appellant (defendant).

*Yakov Pyetranker*, for the appellee (plaintiff).

*Opinion*

SEELEY, J. The defendant, Annika Hebrand, appeals from the judgment of the trial court denying her motion to open a 2017 postjudgment modification, following the 2013 dissolution of her marriage to the plaintiff, Karl Anders Hebrand. The defendant claims that (1) the trial court lacked subject matter jurisdiction, in 2017, to modify the dissolution judgment, and (2) the court, in 2020, improperly failed to find fraud in denying her motion to open. Additionally, the defendant set forth a myriad of other claims in support of her efforts to reverse the denial of her motion to open. The plaintiff counters, inter alia, that the defendant's jurisdictional claim is without merit, the court properly determined that the defendant failed to prove her allegations of fraud, and the remainder of her claims are without merit. We agree with the plaintiff, and, accordingly, affirm the judgment of the trial court denying the motion to open.

The following facts and procedural history are relevant to the resolution of this appeal. The parties married on August 10, 1991, in Gislov, Sweden. On October 25, 2011, the plaintiff commenced the underlying dissolution action, alleging that the marriage had broken down irretrievably. On January 17, 2013, the parties entered into a settlement agreement to resolve the financial and property matters (2013 agreement).[1] The 2013 agreement provided, in relevant part, that the plaintiff would pay alimony to the defendant until her death or remarriage, or until he attained the age of sixty-five. The plaintiff agreed to pay the defendant a monthly amount equal to 27.5 percent of the first $625,000 of his gross earned annual income from employment and an additional 10 percent of his gross earned annual income between $625,000 and $750,000. The 2013 agreement provided that "[i]n the event that the [plaintiff's] compensation changes substantially . . . the [defendant] shall have the right to petition the court for such modification as she believes appropriate." The 2013 agreement also provided for child support to the defendant for the parties' three minor children. The court, *Hon. Stanley Novack*, judge trial referee, dissolved the parties' marriage and incorporated the 2013 agreement into the judgment of dissolution.

On November 15, 2017, the parties jointly moved to modify certain financial aspects of the 2013 agreement. On December 20, 2017, the parties filed a stipulation with the court (2017 modification). The 2017 modification provided that the plaintiff would pay the defendant monthly alimony at a fixed amount of $7000.[2] The parties expressly stated that they had the opportunity to obtain independent legal counsel and that each had been advised by an attorney with respect to the 2017 modification.

Judge Novack held a hearing on December 20, 2017, where the parties appeared as self-represented litigants.[3] In response to a question from the court, the defendant stated that she had consulted with an attorney and indicated that the $7000 per month in alimony was fair. She further stated that she voluntarily agreed to the change in alimony and that she had not been forced into it by anyone. The court then granted the parties' motion and issued a new order of alimony in accordance with the parties' stipulation.

On June 29, 2020, the plaintiff moved to modify the judgment.[4] In his motion to modify, he argued that, subsequent to the 2017 modification, a substantial change in circumstances had occurred.[5] The plaintiff represented that his income decreased, his expenses increased, the defendant's expenses decreased, and that "[t]he defendant has been living together with another person under circumstances which should result in the modification, suspension, reduction or termination of alimony because the living arrangements have caused such a change of circumstances as to alter the financial needs for the defendant." The plaintiff sought, inter alia, to reduce or terminate his alimony obligation.

Thereafter, on October 9, 2020, the defendant filed a motion to open the 2017 modification. On February 25, 2021, she filed a second amended motion to open and vacate the 2017 modification. Therein, she set forth fifteen bases for vacating the 2017 modification, including lack of jurisdiction, lack of statutory authority, fraud in the inducement, and mistake. On April 9, 2021, the court, *M. Moore, J.*, held a hearing on the defendant's motion.

The court issued its order on April 30, 2021. It stated: "The crux of the defendant's argument is that she and the plaintiff discussed modifying the alimony to a reduced figure which would be nonmodifiable in the event she cohabitated or remarried. The stipulation signed by both parties and approved in 2017 has no such provision regarding nonmodifiable alimony. The defendant now claims that the plaintiff committed fraud in the inducement and misrepresentation of material facts." The court concluded that the defendant had failed to prove, by clear and convincing evidence, that the plaintiff had made a false representation.

Addressing the remainder of the defendant's arguments, the court explained: "The defendant presented several additional bases for reopening and vacating the [2017 modification]: the [modification] was prohibited by the separation agreement, the motion was not properly filed because no fee was paid, motion was not properly titled, lack of jurisdiction, lack of authority, proper authority not cited in motion, lack of finding of substantial change in circumstances, negligent misrepresentation, lack of jurisdiction for retroactive modifi-

cation of alimony by agreement, mistake, accident, estoppel by nonmodifiable clause, and lack of subject matter jurisdiction. *The defendant failed to provide any credible evidence or case law to substantiate the additional claims made in her motion.* The motion to open and vacate is denied." (Emphasis added.) This appeal followed.

We begin with the applicable standard of review. "Our review of a court's denial of a motion to open [based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court . . . to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 174 Conn. App. 1, 5, 164 A.3d 787, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017); see also *Conroy* v. *Idlibi*, 343 Conn. 201, 204, 272 A.3d 1121 (2022). In applying this standard, the court's factual findings will not be disturbed unless they are clearly erroneous. See, e.g., *Lavy* v. *Lavy*, 190 Conn. App. 186, 199, 210 A.3d 98 (2019).

I

The defendant first claims that the court lacked subject matter jurisdiction to modify the dissolution judgment in 2017. Specifically, she argues that the plaintiff labeled his filing as a motion for order, rather than a motion to modify, and failed to pay the required filing fee. The defendant contends that, as a result of these purported defects, the court lacked subject matter jurisdiction to modify the 2013 dissolution judgment. We conclude that the trial court had subject matter jurisdiction to consider and accept the parties' 2017 modification and that the defects alleged by the defendant, even if accepted as true, would not deprive the court of subject matter jurisdiction.[6] Accordingly, this claim must fail.[7]

It is axiomatic that "[s]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016). Although we review the decision of the trial court to grant or deny a motion to open under the abuse

of discretion standard, an underlying issue of subject matter jurisdiction presents a question of law subject to plenary review by this court. *Tittle* v. *Skipp-Tittle*, 161 Conn. App. 542, 549, 128 A.3d 590 (2015).

Our Supreme Court expressly has stated that "the Superior Court is a general jurisdiction tribunal with plenary and general subject matter jurisdiction over legal disputes in family relations matters under General Statutes § 46b-1 . . . ."[8] (Citation omitted; footnote omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 322 Conn. 776–77. Section 46b-1 provides in relevant part that "[m]atters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment . . . ." It is clear, therefore, that the Superior Court had jurisdiction to consider and grant the postdissolution motion to modify the award of alimony in this case. See *Tittle* v. *Skipp-Tittle*, supra, 161 Conn. App. 549 (§ 46b-1 (4) provides that Superior Court has jurisdiction over disputes in family relations matters, and General Statutes § 46b-86 (a) provides that court has continuing subject matter jurisdiction to modify alimony).

Furthermore, none of the defects alleged by the defendant, even if true, would have deprived the court of subject matter jurisdiction with respect to the 2017 modification. Specifically, the arguments that the plaintiff mislabeled his 2017 motion and failed to pay a required filing fee simply are not jurisdictional in nature. Regarding the former, our case law has recognized that "a motion is to be decided on the basis of the substance of the relief sought rather than on the form or the label affixed to the motion. . . . It is the substance of a motion, therefore, that governs its outcome, rather than how it is characterized in the title given to it by the movant." (Citations omitted.) *State* v. *Taylor*, 91 Conn. App. 788, 791–92, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005); see also *Silver* v. *Silver*, 200 Conn. App. 505, 520, 238 A.3d 823, cert. denied, 335 Conn. 973, 240 A.3d 1055 (2020). In regard to the latter, this court has noted that the failure to pay a filing fee is not jurisdictional in nature. See *Bruno* v. *Bruno*, 146 Conn. App. 214, 228–29 n.13, 76 A.3d 725 (2013) (mistake by court regarding necessity of filing fee did not deprive it of subject matter jurisdiction to hear motion to open); *Kores* v. *Calo*, 126 Conn. App. 609, 620–21, 15 A.3d 152 (2011) (defendants' failure to pay filing fee did not deprive court of subject matter jurisdiction).[9] Moreover, the defendant has failed to provide us with any authority to support her jurisdictional arguments. Accordingly, the defendant's claim that the court lacked subject matter jurisdiction to consider and grant the 2017 modification is without merit.

## II

The defendant next claims that the court improperly failed to find fraud in denying her motion to open. Specifically, she argues that the plaintiff made false statements, which he knew to be untrue, with the intent to induce her to modify the alimony in 2017. Essentially, the defendant disagrees with the court's finding that she failed to establish an element of fraud by clear and convincing evidence.

We begin with the relevant legal principles. "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . . This statute, however, does not abrogate the court's common-law authority to open a judgment beyond the four month limitation upon a showing that the judgment was obtained by fraud, duress, or mutual mistake." (Internal quotation marks omitted.) *Karen* v. *Loftus*, 210 Conn. App. 289, 297, 270 A.3d 126 (2022); see generally General Statutes § 52-212a; Practice Book § 17-4. Simply stated, "[u]nder Connecticut law, although a motion to open a judgment normally must be filed within four months of entry of the judgment . . . a motion to open on the basis of fraud is not subject to this limitation . . . ." (Citation omitted; internal quotation marks omitted.) *Brody* v. *Brody*, 153 Conn. App. 625, 631, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014).

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . A court's determinations as to the elements of fraud are findings of fact that we will not disturb unless they are clearly erroneous." (Footnote omitted; internal quotation marks omitted.) *Gaary* v. *Gillis*, 162 Conn. App. 251, 256, 131 A.3d 765 (2016); see also *Karen* v. *Loftus*, supra, 210 Conn. App. 300. The defendant bore the burden of proving every element of fraud by clear and convincing evidence. *Sousa* v. *Sousa*, 173 Conn. App. 755, 758, 164 A.3d 702, cert. denied, 327 Conn. 906, 170 A.3d 2 (2017).

In the present case, the court heard the testimony of the parties and considered the evidence.[10] The court noted that the parties had exchanged emails regarding various financial scenarios prior to the execution of the 2017 modification, including the payment of nonmodifiable alimony to the defendant, even in the event that

she remarried. "In defendant's exhibit F, the plaintiff provides a draft agreement [which did not include the aforementioned alimony clause] to the defendant which he tells her to forward to her attorney. In the defendant's response, she said her attorney reviewed a prior draft and told her not to sign the agreement. She continued that she was going to proceed with the agreement against the advice of counsel because she did not want to bargain."

In finding that the defendant had failed to meet her burden of proof with respect to the fraud claim, the court stated: "The evidence submitted by the plaintiff shows the negotiation between the parties on the terms of the [2017 modification]. One email shows the defendant reviewed the agreement with her attorney who advised her not to sign the [2017 modification]. The defendant signed the [2017 modification] against legal advice. The defendant was not fraudulently induced to sign the agreement by the plaintiff." The court specifically found that the plaintiff did not make a false statement to the defendant with respect to the terms of the 2017 modification or the execution of that document.

"[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility." (Internal quotation marks omitted.) *Longbottom* v. *Longbottom*, 197 Conn. App. 64, 75, 231 A.3d 310 (2020). Although the defendant asserts in her brief to this court that the plaintiff secured the 2017 modification by fraud, she has failed to demonstrate that the court's findings were clearly erroneous. As a result of the court's finding that the defendant failed to establish that she was fraudulently induced to join the plaintiff's efforts with respect to the 2017 modification of the dissolution judgment, a finding that has not been shown to be clearly erroneous, we cannot conclude that Judge Moore abused her discretion in denying the motion to open in 2020. "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *State* v. *Jackson*, 334 Conn. 793, 811, 224 A.3d 886 (2020); see also *Johnson* v. *Johnson*, 203 Conn. App. 405, 415–16, 248 A.3d 796 (2021). Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to open.

### III

Finally, the defendant presents a multitude of additional arguments challenging Judge Moore's denial of the 2020 motion to open. These additional arguments include challenges to the granting of the parties' 2017

joint motion to modify, namely, that Judge Novack (1) failed to find that a substantial change in circumstances had occurred before approving the 2017 stipulation that resulted in the modification of alimony, and (2) failed to conform the order to distinct and definite changes in the circumstances of the parties.[11] In ruling on the 2020 motion to open, Judge Moore rejected these arguments because "[t]he defendant failed to provide any credible evidence or case law to substantiate the additional claims made in her motion."

In this case, the defendant did not file her motion to open or an appeal from the underlying judgment in 2017 within the twenty day appeal period. See Practice Book § 63-1. The defendant's appeal from the denial of the 2020 motion to open, therefore, "can test only whether the trial court abused its discretion in failing to open the judgment and not the propriety of the merits of the underlying judgment." (Internal quotation marks omitted.) *Charbonneau* v. *Charbonneau*, 51 Conn. App. 311, 312–13, 721 A.2d 565 (1998), cert. denied, 247 Conn. 964, 724 A.2d 1125 (1999). We conclude that these challenges raised in the defendant's 2020 motion to open constitute an untimely and impermissible collateral attack on the 2017 actions of the court. We also agree with Judge Moore's conclusion that the defendant failed to provide any credible evidence or case law to substantiate these claims. See *Cimino* v. *Cimino*, supra, 174 Conn. App. 8.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The 2013 agreement specifically provided that each party has "received independent advice from counsel of his or her selection and has been fully informed of their legal rights and liabilities and believing this [a]greement to be fair, just and reasonable, has assented to its terms freely and voluntarily . . . ."

[2] The 2017 modification further provided that the defendant was no longer obligated to contribute equally to the extracurricular, nonroutine activities of the parties' children, to the college education expenses for two of the children, or be responsible for any of the children's uninsured and unreimbursed medical expenses.

[3] Neither party filed a certified copy of the transcript from the December 20, 2017 hearing with this court. See Practice Book § 63-8. The defendant included a copy of the nine page transcript in the appendix to her appellate brief. See Practice Book § 67-2 (d).

[4] It does not appear that this motion has been adjudicated by the trial court.

[5] General Statutes § 46b-86 (a) provides in relevant part that, "[u]nless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." See also *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013); *Pishal* v. *Pishal*, 212 Conn. App. 607, 614, 276 A.3d 434 (2022).

[6] We note that had the defendant presented arguments before this court that implicate the subject matter jurisdiction of the trial court, we would need to consider whether the motion to open brought in 2020 was proper or whether it constituted an untimely collateral attack on the 2017 actions of the trial court.

Our Supreme Court has recognized that, "[a]lthough challenges to subject matter jurisdiction may be raised at any time, it is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their

validity are disfavored. . . . The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings. Unless it is entirely invalid and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016); see also *Vogel* v. *Vogel*, 178 Conn. 358, 362, 422 A.2d 271 (1979); *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 240–44, 860 A.2d 1233 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005). As a result of our conclusion that the purported defects set forth by the defendant, even if true, would not have deprived the trial court of subject matter jurisdiction, we need not consider whether her claim constitutes an improper collateral attack on the 2017 modification.

[7] The defendant also made passing references in her appellate brief that the trial court lacked the statutory authority to grant the 2017 modification. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Fusco* v. *Fusco*, 266 Conn. 649, 652, 835 A.2d 6 (2003). Stated differently, "a failure to comply with statutory requirements will implicate only the court's authority to act in accordance with the statute, not the court's subject matter jurisdiction." *GMAT Legal Title Trust 2014-1, U.S. Bank, National Assn.* v. *Catale*, 213 Conn. App. 674, 691, 278 A.3d 1057, cert. denied, 345 Conn. 905,      A.3d      (2022). The defendant, however, has failed to set forth a complete and persuasive legal argument as to how the court improperly exercised its legal authority in granting the 2017 modification. Furthermore, raising this argument, which does not implicate the court's subject matter jurisdiction, in the 2020 motion to open constitutes an improper collateral attack of the 2017 orders of the trial court.

Additionally, the defendant argued in her appellate brief that the plaintiff failed to provide the court with "any proper authority for granting the [2017 modification]," nor did he provide the court with a copy of the 2013 agreement ordering him to pay alimony. We conclude that these contentions are meritless and do not address them further.

[8] Although the legislature has amended § 46b-1 since the events underlying this appeal; see, e.g., Public Acts 2021, No. 21-78; those amendments have no bearing on the merits of this appeal. All references herein to § 46b-1 are to the current revision of the statute.

[9] In her appellate brief, the defendant claims that the trial court's lack of subject matter jurisdiction to modify the dissolution in 2017 was "entirely obvious," and, therefore, her 2020 jurisdictional challenge did not amount to an untimely collateral attack. Within that discussion, she argues that the December 20, 2017 modification constituted an improper retroactive modification of alimony because the effective date of the $7000 monthly alimony was January 1, 2017. The defendant subsequently argues in her appellate brief that the court lacked the statutory authority to permit the parties to modify the alimony award retroactively.

To the extent that the defendant contends that a claim of an improper retroactive modification of alimony implicated the subject matter jurisdiction of the trial court, we disagree. We emphasize that the Superior Court is provided, by our statutes, with "plenary and general subject matter jurisdiction over legal disputes in family relations matters, including custody and support." (Internal quotation marks omitted.) *O'Bryan* v. *O'Bryan*, 67 Conn. App. 51, 54, 787 A.2d 15 (2001), aff'd, 262 Conn. 355, 813 A.2d 1001 (2003). Regarding the defendant's argument that the court lacked the authority to modify the alimony award retroactively, we conclude that this contention amounts to an untimely and improper collateral attack on the 2017 orders of the trial court. We also note that the trial court rejected this claim on the basis of the defendant's failure to present any evidence or authority in support thereof. Finally, we note that the principle that alimony already accrued may not be modified applies only when a party seeks modification pursuant to § 46b-86, which was not the basis of the 2017 modification. See

*Mihalyak* v. *Mihalyak*, 30 Conn. App. 516, 520, 620 A.2d 1327 (1993).

[10] "In considering a motion to open the judgment on the basis of fraud . . . the trial court must first determine whether there is probable cause to open the judgment for the limited purpose of proceeding with discovery related to the fraud claim. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . If the moving party demonstrates to the court that there is probable cause to believe that the judgment was obtained by fraud, the court may permit discovery. See *Oneglia* v. *Oneglia*, [14 Conn. App. 267, 269–70, 540 A.2d 713 (1988)] (approving trial court's position that [i]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held)." (Internal quotation marks omitted.) *Gaary* v. *Gillis*, supra, 162 Conn. App. 256–57; see also *Brody* v. *Brody*, supra, 153 Conn. App. 634 (party seeking to obtain discovery related to allegedly fraudulent conduct that transpired prior to entry of judgment must, consistent with aforementioned precedent, (1) move to open that judgment and (2) demonstrate to trial court that allegations of fraud are founded on probable cause). Our review of the record reveals that an *Oneglia* hearing was not held in the present case. Rather, the court held a hearing on the merits of the defendant's motion to open based on fraud, without a request, or any objection, from the parties for discovery pursuant to *Oneglia*. On appeal, the defendant does not challenge the absence of an *Oneglia* hearing in this matter.

[11] The defendant also claims that the 2017 modification was based on mutual mistake and therefore should have been opened. We agree with Judge Moore's conclusion that the defendant failed to substantiate this claim with evidence and case law. We also note that the plaintiff testified that he would not have signed the 2017 modification in the absence of a change to the alimony award, and the court was free to credit this testimony.

We conclude that the defendant has inadequately briefed her claims that (1) "the motion for order . . . should be opened and vacated by estoppel due to the nonmodifiable clause contained within paragraph 6.7 of the separation agreement," and (2) the court improperly failed to award attorney's fees. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022); *Stilkey* v. *Zembko*, 200 Conn. App. 165, 175, 238 A.3d 78 (2020).